IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDA C. OLVERA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. CIV-19-137-RAW-KEW |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Linda C. Olvera (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 27 years old at the time of the decision. She has a limited education and no past relevant work. Claimant alleges an inability to work beginning on June 13, 2011, due to limitations resulting from hurt nerves in her spine, numbness in her legs, and chronic pain.

## Procedural History

On January 22, 2016, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 6, 2018, ALJ Luke Liter conducted a video hearing from Tulsa, Oklahoma, and Claimant participated from

3

Poteau, Oklahoma. On April 11, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on March 18, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to find that Claimant's impairments are equivalent to Listing 1.04(A); (2) improperly assessing the RFC (with various subparts); and (3) making an improper step-five determination.

### Consideration of a Listing

In his decision, the ALJ found Claimant suffered from severe impairments of desiccation of discs at the L5-S1 level of the lumbar spine, obesity, unspecified depressive disorder, general anxiety disorder, and mild cognitive impairment. (Tr. 16). He determined Claimant could perform light work with additional limitations. Claimant could lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. She could sit for

4

six hours out of an eight-hour workday and could stand or walk for a combined total of six hours in an eight-hour workday. Claimant could occasionally climb ladders, ropes, or scaffolds and occasionally stoop. She could understand, remember, and carry out simple and some complex tasks and tolerate superficial contact with co-workers, supervisors, and members of the public. (Tr. 18).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of hotel housekeeper, small product assembler, and merchandise marker, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 25-26). As a result, the ALJ concluded that Claimant was not under a disability since January 22, 2016, the date of the application. (Tr. 26).

Claimant contends the ALJ should have determined that her impairments are of an equivalent severity to Listing 1.04(A). At step three of the sequential evaluation, an ALJ is required to determine whether a claimant's impairment "is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). An impairment is considered "medically equivalent" to a listing if there are other findings related to an impairment "that are at least of equal medical significance to the required criteria." 20 C.F.R. §

416.926(b)(1)(ii). The ALJ is required to discuss the evidence and explain why he found Claimant was not disabled at step three. *Id*. It is a claimant's burden to establish that his impairments meet or equal a listed impairment. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). In order to do so, a claimant must meet "**all**" of the criteria of the listed impairment. If an impairment manifests only some of the criteria, no matter how severely, it does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

Listing 1.04 addresses disorders of the spine, including herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture, which result "in compromise of a nerve root (including the cauda equina) or the spinal cord." To meet Section A of Listing 1.04, all of the following must be present:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R., Pt. 404, Subpt. P., App. 1, Listing 1.04(A).

The ALJ discussed Listing 1.04 in the decision and determined:

> Despite the [C]laimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. In

6

> making this finding, the undersigned considered listing 1.04 – disorders of the spine and SSR 02-1p – obesity.
>
> Listing 1.04 requires degenerative disc disease resulting in compromise of a nerve root or the spinal cord with (A) evidence of nerve root compression or (B) spinal arachnoiditis or (C) lumbar spinal stenosis resulting in pseudoclaudication. The medical records are void of imaging showing compromise of a nerve root, compromise of the spinal cord, evidence of nerve root compression, spinal arachnoiditis or lumber spinal stenosis[.]

(Tr. 17).

Although Claimant admits there is no MRI evidence of nerve root compromise or spinal cord involvement, Claimant argues her exam findings "closely approximate the requirements of the listing[.]" Plaintiff's Brief, p. 12 (Docket Entry #13) (citing exam findings of limited range of motion, muscle spasms, tenderness, diminished reflexes, weakness, positive straight-leg raising). However, as noted by the Defendant, scattered exam findings, or even one examination satisfying the severity requirement to meet Listing 1.04(A), do not meet the duration requirement for Claimant to medically equal the Listing. *See* Social Security Acquiescence Ruling (AR) 15-1(4), 2015 WL 5697481, at *4 (Sept. 23, 2015) (discussing policy under Listing 1.04(A) and noting that "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level required by listing 1.04A. An individual who shows only

7

some of the criteria on examination presents a different, less severe clinical picture than someone with the full set of criteria present simultaneously. To meet the severity required by the listing, our policy requires the simultaneous presence of all the medical criteria in listing 1.04A."); 20 C.F.R. § 416.925(c)(3,4) (noting duration requirement of at least 12 months). Thus, this Court finds no error in the ALJ's determination that Claimant's impairment or combination of impairments did not medically equal the severity of Listing 1.04(A).

### RFC Determination

Claimant raises various arguments for why the ALJ's RFC determination is not supported by substantial evidence. She alleges: (1) the ALJ engaged in "cherry picking" of the evidence and thereby ignored evidence that undercuts her ability to perform light work with the limitations imposed by the ALJ on a continuing and sustained basis; (2) the ALJ's reasons for rejecting the medical assessment and opinions of examining physician, Richard Hastings, D.O., lack legitimate support in the record; (3) the ALJ erred in affording "great weight" to the opinions of the state agency physicians; and (4) the ALJ omitted mental limitations from the RFC assessment based upon the findings of consultative psychologist Theresa Horton, Ph.D.

Claimant first argues the ALJ's RFC assessment that she can perform light work with additional non-exertional limitations is

8

not supported by the medical evidence. She cites to evidence in the record that she contends supports a more restrictive RFC, including her lower back impairments resulting in pain, radicular symptoms, weakness in her lower extremities, and limited range of motion. She also cites to evidence of weakness in her legs, especially her right leg, her inability to operate foot controls and stand or walk for significant periods of time, and her limited range of motion in her thoracic and lumbar spine that is incompatible with any bending, twisting, or other similar postural movements. She maintains that overall the medical evidence shows weakness and painful range of motion, which is in direct contradiction of the ALJ's RFC assessment, and demonstrates that the ALJ "underplayed the importance of these more severe findings[.]" Plaintiff's Brief, p. 14 (Docket Entry #13).

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010 (citation omitted). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). However, "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for

express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

The ALJ summarized the evidence in detail. He discussed Claimant's allegations in the disability reports and her testimony. (Tr. 18-20). Citing to the record, the ALJ concluded the limitations in the RFC were supported by the mostly normal diagnostic examinations of Claimant's lumbar spine (Tr. 317, 411, 412), positive response to physical therapy (Tr. 353-54), normal orthopedic examination (Tr. 413-14), self-reported ability to take care of her two-year old full-time, and prescribed conservative treatment for back pain (Tr. 413-14). He further concluded the RFC was supported by normal physical examination with notations of exaggeration and refusing to cooperate in January of 2016 (Tr. 301), self-reported improvement of pain with medication (Tr. 306), physical examination showing exaggerated tenderness and unwillingness to move limbs in March of 2016 (Tr. 308), and a mostly normal mental status examination (Tr. 329). The ALJ's decision demonstrates that he discussed the probative evidence in the record. This Court finds no error.

Claimant also contends the ALJ failed to properly evaluate the opinion of Dr. Hastings, who examined Claimant on September 13, 2017. She asserts that the reasons given by the ALJ for rejecting Dr. Hastings' assessment lack support from the record.

10

Dr. Hastings examined Claimant, and based upon her history, his review of her medical records, and her physical examination, he determined Claimant suffered from permanent clinical diagnoses and clinical conditions of "1. [c]hronic lumbar spine discogenic pain syndrome with clinical radiculopathy associated with limited mobility, weakness, reflex asymmetry and sciatic nerve involvement[,] 2. [s]tatus-post left wrist surgery[,] 3. [c]hronic thoracic spinal myofascial syndrome with associated spasm and limited mobility." Based on these permanent diagnoses and conditions, Dr. Hastings concluded Claimant had the following permanent vocational restrictions: occasional lifting, pushing, pulling, or carrying of ten pounds; frequent lifting, pushing, pulling, or carrying of less than ten pounds; standing or walking two hours in an eight-hour workday; limited repetitive activities of foot controls with the right lower extremity; occasional ramp or stair climbing; no climbing of ladders, ropes, or scaffolds; occasional balancing and stooping; avoidance of kneeling, crouching, or crawling activities; and avoidance of environmental and/or vocational hazards, including heights "secondary to the patient's right lower extremity instability of motor weakness from her lumbar radicular sciatica." Dr. Hastings recommended Claimant undergo further testing and evaluation. (Tr. 421-28, 429-441).

The ALJ discussed Dr. Hastings' report and limitations from his internal medicine diagnostic and therapeutic consultation

examination of Claimant. He noted the examination was at the request of Claimant's attorney representative for workers' compensation purposes and that Dr. Hastings concluded Claimant had permanent vocational restrictions based upon her permanent clinical diagnoses and clinical conditions. The ALJ referenced the "stark contrast" between Dr. Hastings' examination findings and those from Claimant's examination by Michael Wolfe, M.D., in December of 2016. Dr. Wolfe examined Claimant for complaints of low back pain, finding that both her lower extremities revealed intact motor and sensory function and good pulses, and she had a full range of motion in her hips as well as good alignment, strength, and stability. Dr. Wolfe noted negative straight leg raises, negative FABERE, and negative Babinski. Claimant exhibited symmetric reflexes, trigger point at L5-S1 (more on the left than the right), and unremarkable radiographs. Dr. Wolfe assessed Claimant with lumbar syndrome and prescribed treatment of Mobic, core strengthening, two trigger point injections at L5-S1, and back support. (Tr. 22, 411-14). The ALJ further mentioned Dr. Hastings' recommendation that Claimant get further evaluation, diagnostic testing, and treatment for her lumbar spine. He noted there were no additional treatment records, testing, or evaluations in the file. (Tr. 22). He specifically discussed the limitations imposed by Dr. Hastings. (Tr. 23).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 F. App'x 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ assigned "little weight" to Dr. Hastings' opinion and provided reasons for that weight. He determined the opinion was not consistent with the objective medical evidence, noting "Dr. Hastings' limitations are in contrast to her last physical examination by Dr. Wolfe who found mostly normal exam findings." He also concluded Dr. Hastings' limitations were "in contrast with

the diagnostic evidence noting desiccation of the discs at the L5-S1 level, but no spinal canal stenosis or focal disc herniation or evidence of spondylolisthesis or neuroforaminal narrowing[.]" The ALJ referenced that Dr. Hastings was not Claimant's treating physician (he conducted a one-time examination of Claimant), and he had made referrals for Claimant to obtain further evaluation and testing by board certified specialists, but there was no additional evidence in the record to support his limitations. The ALJ further noted that Dr. Hastings' examination of Claimant "was at the request of her attorney-representative for purposes of an on-the-job injury." (Tr. 23-24). The Court finds no error in the ALJ's evaluation of Dr. Hastings' opinions.

Claimant next argues it was inappropriate for the ALJ to assign more weight to the opinions of the state agency medical consultants over the opinion of Dr. Hastings, who examined her. She contends the consultants' opinions should not have been afforded such deference because they were rendered prior to the addition of much of the evidence in the record, including Dr. Hastings' report and opinion. However, this Court finds no error in the weight assigned by the ALJ to the opinions of the state agency physicians. The ALJ discussed the opinions of the state agency physicians that Claimant was capable of light work with occasional stooping, climbing of ladders, ropes, and scaffolds. (Tr. 24, 60-61, 76-79, 331, 346, 420). Citing to specific evidence

14

in the record, he determined the opinions were entitled to "great weight" because they were well-supported by physical examinations in the file, positive response to physical therapy, normal MRI and x-ray examinations of the lumbar spine, and the conservative treatment recommendations of Dr. Wolfe. The ALJ explicitly acknowledged that the limitations were contradicted by Dr. Hastings' findings, but the ALJ gave the state agency physicians' opinions more weight "because they are more consistent with and supported by the objective evidence in the file." (Tr. 24).

Claimant further argues the ALJ failed to include all of her mental functional limitations in the RFC assessment. He focuses specifically on the mental consultative examination by Dr. Horton. Claimant maintains that even though the ALJ afforded Dr. Horton's opinions "great weight," he failed to include all of her limitations in the RFC, specifically that Claimant would not adjust well in areas that are fast paced and/or densely populated.

Dr. Horton examined Claimant on July 26, 2016. Claimant reported suffering from depression following an on-the-job injury and being anxious most of the time. She could provide for her own personal hygiene (although she took longer than in the past) and could cook, clean, listen to music, and used the internet for information. Upon mental status examination, Dr. Horton found Claimant's thought processes were logical, organized and goal directed, she had no history of suicidal ideation, no other unusual

15

thought content, no auditory/visual hallucinations, predominate anxious and depressed mood, intact memory and recall, oriented x4, and adequate concentration. Dr. Horton assessed Claimant with low average intelligence, but she was able to complete serial 7's, interpret abstract parables, and exhibited appropriate judgment and fair insight. Dr. Horton diagnosed Claimant with mild cognitive impairment, generalized anxiety disorder, and unspecified depressive disorder. As her prognosis, she stated Claimant appeared "capable of understanding, remembering, and managing mostly simple and somewhat more complex instructions or tasks, consistent with historical employment as a caregiver. She would likely not adjust well in areas that are fast paced, and/or densely populated." (Tr. 21, 327-30).

    The ALJ discussed Dr. Horton's opinions in the decision. He referenced her findings that Claimant could understand, remember, and manage most simple and somewhat complex instructions and tasks, but would not adjust well in areas that were fast paced or densely populated. He assigned Dr. Horton's opinions "great weight" based upon her examination, interview, and testing of Claimant. He determined "Dr. Horton's limitations are supported by her examination findings and the lack of mental health treatment in the file including the [C]laimant's self-reported limitations in her function reports[.]" (Tr. 23).

The ALJ specifically discussed Dr. Horton's opinions and accounted for them in the RFC by finding Claimant could understand, remember, and carry out simple and some complex tasks. Claimant could tolerate superficial contact with co-workers, supervisors, and members of the public. (Tr. 18).[2] This Court finds no error with the ALJ's treatment of Dr. Horton's opinion in the RFC assessment.

### Step-Five Determination

Claimant asserts the ALJ's hypothetical questioning of the VE was improper because he failed to include all of Claimant's limitations in the RFC. This Court has determined that the ALJ's consideration of Claimant's conditions was appropriate and the restrictions imposed in the RFC were supported by substantial evidence. Further, the ALJ's questioning of the VE accurately reflected his properly determined RFC.

---

[2] Even if the ALJ did not consider Dr. Horton's prognosis that Claimant "would likely not adjust as well in areas that are fast paced and/or densely populated," in the RFC, there would be no error. Such a statement merely indicates that Claimant could potentially have some difficulties, but it lacks the certainty necessary to require that the ALJ include related functional limitations in the RFC. *See*, *e.g.*, *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) ("But Dr. Valette did not assign any functional limitations to Ms. Paulsen other than to mention that Ms. Paulsen '*probably* has difficulty with concentration and remembering because of attention problems.' Accordingly, the ALJ was not required to consider Dr. Valette's opinion in formulating Ms. Paulsen's RFC.") (emphasis in original).

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of September, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE